## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| William A. Greene, Jr.,<br>    Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:20cv522 (LMB/TCB) |
| | ) | |
| Alisa Gregory, et al,<br>    Defendants. | ) | |
| | ) | |

### MEMORANDUM OPINION

William A. Greene, Jr. ("Greene" or "plaintiff"), a Virginia inmate proceeding pro se,

filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that defendants Sheriff Alisa

Gregory ("Gregory"); Chief Deputy of Operations, Ann Felton ("Felton"); and, Deputy Sheriff

Tyrone Montague ("Montague") (collectively, "the defendants") violated his constitutional rights

while he was detained at the Henrico County Regional Jail ("HCRJ"). Specifically, Greene

alleges that he was subjected to unconstitutional conditions of confinement and due process

violations when he was transferred to HCRJ East. [Dkt. No. 5].[1] The defendants have filed a

motion for summary judgment with supporting declarations and exhibits. [Dkt. Nos. 18-19].

---

[1] The Court dismissed a third claim without prejudice on August 18, 2020 because it did not
arise out of the same transaction, occurrence, or series of transactions or occurrences raised in
the first two claims and there was no question of law or fact common to all defendants. [Dkt.
No. 9 at 4, citing Fed. R. Civ. P. 20]. Greene filed a separate action raising that claim on
September 23, 2020, Greene v. Edwards, et al., 1:20cv1116. In his response to the motion for
summary judgment, Greene appears to be attempting to amend his complaint by adding claims of
excessive use of force, inadequate medical care, participation in an anger management program,
and deliberate indifference. [Dkt. No. 25 at 8]. A claim raised in opposition to a motion for
summary judgment is not properly before the Court. See Klein v. Boeing Co., 847 F. Supp. 838,
844 (W.D. Wash. 1994). Greene cannot amend his complaint by raising new matters in a
response to a motion. See Hurst v. District of Columbia, 681 F. App'x. 186, 194 (4th Cir. 2017)
("a plaintiff may not amend her complaint via briefing") (citing Commonwealth of Pennsylvania
v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988)). Because his claims raised in his opposition
are not properly before the Court, they will not be addressed here.

Greene has been afforded the opportunity to file responsive materials pursuant to <u>Roseboro v.</u>
<u>Garrison</u>, 528 F.2d 309 (4th Cir. 1975).  He has responded [Dkt. Nos. 25, 28] and has also
moved to dismiss defendants' motion for summary judgment.  [Dkt. No. 24].  Accordingly, this
matter is now ripe for disposition.  For the reasons that follow, the defendants' motion for
summary judgment will be granted, plaintiff's motion to dismiss will be denied, and judgment
will be entered in defendants' favor.

In his complaint, plaintiff raises two claims.  First, he alleges that the defendants violated
his constitutional rights by subjecting him to conditions of confinement at HRCJ East, which he
alleges were unconstitutional because of the size of his cell; the cell being infested with mice and
various insects and having rodent droppings and being poorly lighted.  He also alleges the food
delivery was unsanitary and he was allowed out of his cell for only ninety minutes each day.
[Dkt. No. 5 at 5-8].  In his second claim, he alleges that the same three defendants violated his
right to due process by transferring him to HCRJ East on September 24, 2019, November 22,
2019, and January 13, 2020 without notice, a hearing, or reason as unconstitutional punishment
because he was a pretrial detainee.  [Dkt. No. 5 at 9].  Plaintiff also alleges that he was
transferred to administrative segregation by the defendants despite having been in the general
population at HCRJ West from December 2019 through January 13, 2020 without incurring any
infractions.

## I. Uncontested Facts

### A.  HCRJ Intake, Housing and Grievance Procedures

The HCRJ is comprised of two separate facilities — HCRJ West, located in Henrico,
Virginia and HCRJ East, located in New Kent, Virginia.  HCRJ assigns inmates to a housing unit
via a formal classification process that considers an inmate's current offenses, previous

convictions, court status, pending charges, history of assaultive behavior, and screenings for risk of victimization and sexual abuse.  On occasion, inmates need to be re-classified based on behavior, overriding needs, or other circumstances.  HCRJ's Institutional Classification Committee ("ICC") reviews and determines an inmate's custody and housing status.  An ICC review is required when inmates are considered for administrative segregation, permanent protective custody assignments, or behavior control.  Inmates can be held in administrative segregation until an ICC hearing is conducted.  [Dkt. No. 19-1].

Inmates can appeal an ICC review and complain about conditions of confinement through the HCRJ grievance procedure.  [Dkt. Nos. 19-31, Grievance Procedures; 19-30].  Defendants maintain that Greene received a copy of the grievance procedure on June 28, 2019.  Greene's claim that he did not receive a copy of the grievance procedure does not create a genuine issue of disputed fact.[2]  [Dkt. No. 19-33].  A grievance must be filed within two business days of an incident and a response is due within nine business days.  An inmate may appeal a decision within two business days, which should be forwarded to the jail administrator for a secondary review.  [Dkt. No. 19-31].

---

[2] On June 28, 2019, Greene was provided with a copy of the HCRJ Handbook, which contains HCRH's grievance procedures, including ICC appeals. [Dkt. Nos. 19-30 at 1-2; 19-33]. In a statement that is acknowledged but unsworn, Greene denies he received an HCRJ Handbook and states the signature on the form indicating he received the Handbook is not his. [Dkt. No. 28 at 3]. "An acknowledgment is not the equivalent of an affidavit.... [and] is neither a declaration under penalty of perjury nor verification that the contents of the answers are true and correct." Brady v. Blue Cross & Blue Shield, Inc., 767 F. Supp. 131, 135 (N.D. Tex. 1991) (citations omitted); see McCoy v. Robinson, No. 3:08CV555, 2010 U.S. Dist. LEXIS 99727, at *4 (E.D. Va. Sept. 22, 2010) (alterations in original) ("[M]erely notarizing [a] signature does not transform a document into [an] affidavit....") (quoting Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1306-07 (5th Cir. 1998)). An unsworn statement is incompetent to raise an issue of fact that precludes summary judgment. Kline, 845 F.2d at 1306. Greene's complaint [Dkt. No. 1], amended complaint [Dkt. No. 5], and his other responses to the defendants' motion for summary judgment [Dkt. Nos. 24, 25, 28] are also unsworn.

Inmates are assigned to the Restrictive Housing Unit ("RHU") at HCRJ East for administrative and disciplinary purposes, which include, but are not limited to an inmate being at risk of harming himself or others or if an inmate is awaiting a classification assessment or hearing. There are eight pods in the RHU: Pod 63A is for medical purposes; Pod 63B is for new committals/weekend inmates; Pod 63C is for protective custody; Pods 63D through 63G are "lockdown" units; and Pod 63H is used for inmates with mental health issues. Pod 64A houses inmates enrolled in the Recovery in a Secure Environment ("RISE") program, which assists inmates with the rehabilitation process. Inmates subject to disciplinary actions are immediately removed from the RISE program, which has a zero-tolerance policy. [Dkt. No. 19-1 at 2].

Pods 64A (the RISE program), and 63C are "open pods" where inmates are housed in individual cells but have open space that allows inmates to congregate. Inmates in the two units are locked down between 11:30 p.m. and breakfast but have access to the gym, law library, and food delivery without restrictions. Inmates in these pods also have the option to receive educational instruction and chaplain visits upon request.

Inmates residing in lockdown units are confined for twenty-two and one-half hours a day but have 90 minutes of recreational time, access to the law library, and food delivery with restrictions. Upon request, lockdown inmates have access to a chaplain, regular library books and educational instruction. [Id.].

B. *Greene's Admission, Disciplinary, and Transfer History*

Greene was processed at HCRJ West on May 9, 2019 and was assigned to HCRJ West because his security classification was minimum. [Dkt. Nos. 19-1 at 3; 27-2 at 4-5]. Within a week, Greene was charged with the first of many disciplinary infractions.

4

Case 1:20-cv-00522-LMB-TCB   Document 39   Filed 10/18/22   Page 5 of 23 PageID# 564

On May 16, 2019 Greene was accused of exposing himself to three female inmates while in the medical unit, one of whom claimed Greene grabbed her genitals.  Greene pleaded not guilty to the sexual misconduct charge at his disciplinary hearing on May 21, 2019.  He was found guilty and sentenced to twelve days in isolation.  [Dkt. No. 19-3].  Greene was also charged with three criminal offenses as a result of this conduct.  Greene pleaded nolo contedere to two offenses (indecent exposure and simulated masturbation) and was sentenced to 12 months with 6 months suspended for each conviction.  [Dkt. No. 19-41].[3]

On July 1, 2019, HCRJ transferred Greene to the RISE program, HCRJ Pod 64A.  On July 8, 2019, Greene was transferred back to HCRJ West because he was scheduled for a bond hearing. The next day, the inmate who had previously accused Greene of touching her genitals made a Prison Rape Elimination Act[4] ("PREA") complaint concerning Greene's presence at

---

[3]  The third charge (sexual battery) was terminated by nolle prosequi.  See Virginia Courts Case Information, http://www.courts.state.va.us/courts/home.html (General District Courts (Henrico County page, search" Greene, William"), (last viewed March 19, 2021).  See Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.") (collecting cases).  Although Greene was convicted of offenses while in custody, for the purposes of the motion for summary judgment the Court will consider him a pre-trial detainee.

[4]  Congress enacted PREA to address sexual misconduct in correctional settings.  The United States Department of Justice ("DOJ") has establish standards for jails and prisons, which define sexual abuse of an inmate by another inmate to include any "intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or the buttocks of another person, excluding contact incidental to a physical altercation." 28 C.F.R. §115.6.  Upon learning of the incident, HCRJ had a duty to "take immediate action to protect the" victim, id. § 115.62, and to take protective "measures, such as housing changes or transfers for inmate victims or abusers."  Id. § 115.67(b).  HRCJ is also prohibited from revealing "any information related to a sexual abuse report to anyone other than to the extent necessary, as specified in agency policy, to make treatment, investigation, and other security and management decisions."  Id. § 115.61.  The standard for a founded PREA complaint is no "higher than a preponderance of the evidence in determining whether allegations of sexual abuse or sexual harassment are substantiated."  Id. §115.72.  The standards are used to determine if a jail or prison has complied with PREA during audits conducted by DOJ.  HCRJ has a zero-tolerance policy for any sexual misconduct and Greene received PREA awareness education on June 28, 2019.  [Dkt. No. 19-34 at 1].

HCRJ West.  [Dkt. Nos. 19-5 and -6].  As a result of that complaint, Greene was returned to

HCRJ East on July 10, 2019, and placed in the RISE program.

On August 6, 2019, Greene was charged with sexual misconduct (masturbating with his

pants down in front of a deputy) and transferred to Pod 63G.  Greene was returned to HCRJ

West on August 12, 2019 for his hearing on this charge.  He pleaded not guilty, claiming he was

only applying ointment to his genitals.  [Dkt. No. 27-6 at 5].  Greene was found guilty, received

fifteen days in isolation, and was removed from the RISE program.  Greene's appeal was denied.

[Dkt. No. 19-8].  On August 14, 2019, Greene was returned to Pod 63G in HCRJ East to serve

his isolation time and then transferred back to HCRJ West on August 21, 2019.  [Dkt. Nos. 19-5,

19-12, 19-9, and 27-6 at 6].

On August 31, 2019, Greene threatened an inmate while in the holding cell at HCRJ

West.  At his September 6, 2019 hearing on that charge, Greene entered into a plea agreement in

which he agreed to serve time in isolation.  On September 6, 2019, Greene was classified as

being on zero tolerance status because of his frequent disciplinary history.  [Dkt. No. 19-12].

When an inmate is on zero tolerance status, an additional charge will result in the inmate being

automatically classified into administrative segregation.  [Dkt. No. 19-6].

On September 12, 2019, the PREA complainant informed the HRCJ PREA compliance

coordinator that she and Greene were in the HCRJ West medical unit at the same time and that

Greene made her feel uncomfortable by discussing the PREA complaint that had resulted in his

criminal charges.  HCRJ determined that Greene needed to be transferred to HCRJ East, but no

cell was open at that time.  HCRJ decided that Greene would be sent to HCRJ East when a cell

became available.  [Dkt. Nos. 19-34; 19-36].

On September 24, 2019, Greene was transferred to Pod 63F at HCRJ East for administrative reasons based on his disciplinary history and scheduled for an ICC hearing on October 23, 2019. On September 25, 2019, Greene filed a grievance protesting his transfer. The response to that grievance informed Greene that he had been transferred "per administration" and to "please refer your questions to Chief Felton." [Dkt. No. 19-13]. Greene did not appeal that response.

On September 28, 2019, a nurse accused Greene of masturbating while she was giving him medicine and he was charged with sexual misconduct. [Dkt. Nos. 19-1 at 5; 19-14]. On October 3, 2019, Greene pleaded not guilty, was found guilty, and was sentenced to twelve days in isolation and loss of recreation, television and phone privileges starting on October 19, 2019. [Dkt. No. 19-14 at 1].

Greene filed a grievance on October 16, 2019, stating there was no basis to place him in segregation. Felton responded that he had been placed "on zero tolerance" on September 6, 2019, and was found guilty of a sexual misconduct charge that had "occurred on 9/28/19" and that he would "receive another ICC review on 10/23/19." [Dkt No. 19-16 at 2]. Felton advised Greene that his "behavior" had resulted in his segregation "status." [Id.].

The October 23, 2019, ICC hearing determined that Greene did not pose a threat to security or the facility, but the ICC reversed itself later that day because Greene overdosed shortly after he left the hearing. As a result, Greene was ordered to remain under ICC review for thirty more days. He was subsequently charged for refusing to submit to a urinalysis, and the matter was resolved on October 28, 2020 by a plea agreement in which Greene agreed to serve seven days in isolation and was returned to HCRJ East Pod 63F. [Dkt. Nos. 19-5, 19-18].

7

On November 18, 2019, Greene was returned to HCRJ West for his ICC hearing scheduled for November 22, 2019. The ICC determined Greene would be returned to HCRJ East to re-enter the RISE program. Jail records indicate that Greene did not file a grievance with regard to the November 22, 2019 transfer. [Dkt. No. 19-19]. Greene was returned to HCRJ East Pod 64A on November 22, 2019.

On December 7, 2019, Greene was in an altercation with another inmate and was charged with disobeying a direct order, which violated RISE program rules, and resulted in Greene being transferred to Pod 63D. [Dkt. No. 27-6 at 9]. He was found guilty at his hearing on December 12, 2019 and was sanctioned with "time served" in isolation while awaiting the hearing. [Dkt. No. 19-20].

On December 12, 2019, Greene was transferred to general population at HCRJ West. [Dkt. No. 19-5]; however, HCRJ West personnel determined that the PREA complainant was also housed at HCRJ West. Due to PREA concerns and because female and male inmates are occasionally in the same vicinity, Greene was transferred back to HCRJ East on January 13, 2020. [Dkt. Nos. 19-1; 19-34].

At an ICC hearing on January 15, 2020, the ICC determined that Greene should remain in administrative segregation based on the PREA concerns. Greene filed two grievances related to the transfer. [Dkt. Nos. 19-22; 19-23]. Greene was told he could not return to HCRJ West "at this time" [Dkt. No. 19-22 at 2], and that he would be housed in the less restrictive Pod 63C at HCRJ East because he did not want to be in the RISE program. Greene was transferred to Pod 63C, an open pod, on January 16, 2020. [Dkt. No. 27-6 at 10].

On February 25, 2020, Greene was removed from Pod 63C and assigned to Pod 63G because he assaulted an inmate. Greene admitted he "poked" the other inmate but argued it was

8

horseplay and not malicious. Greene was convicted on February 26, 2020 and his appeal of the assault charge was denied on March 3, 2020. [Dkt. No. 19-24].

Greene remained under ICC review until April 13, 2020 when he was transferred to general population at HRCJ East. [Dkt. No. 27-6 at 13]. On April 16, 2020, he was transferred to Pod 63G and placed under ICC review again after being charged with fighting. [Id.]. Greene was convicted of that charge on April 21, 2020. His appeal was denied. [Dkt. No. 27-4]. Greene grieved his confinement in HCRJ East again on April 30, 2020. That grievance was denied because Greene could not be placed in general population due to having received a new charge and being considered in need of maximum custody. Greene was transferred in and out of administrative segregation isolation pods from May 2020 until September of 2020 based on his continued problematic behaviors. [Dkt. Nos. 19-1 and 19-12].[5]

*C. Jail Cell Conditions*

The evidence in the record shows that HCRJ has a pest control program and contracts with the Dodson Pest Control Company ("Dodson"). Dodson conducts monthly inspections for insect and rodent infestations, sets traps and uses repellants throughout the facility, including the cell blocks. On January 14, 2020, Dodson serviced the cells for mice activity but found no infestations then or during the months of February through May 2020. [Dkt. Nos. 19-1 and 19-27].[6]

---

[5] Greene was transferred to HCRJ Pod 63F for administrative purposes on April 22, 2020, to Pod 63B on June 6, 2020, and back to general population in Pod 64B on June 9, 2020. [Dkt. No. 27-6 at 15]. Greene was also transferred in and out of the HCRJ East for appearances at HCRJ West; for court appearances in New Kent, Chesterfield, Richmond; and for transport to medical appointments. [Id. at 4, 5, 7, 8, 10, 11, 14].

[6] Defendants attached the monthly service reports from Dodson for the months of September 2019 through May 2020, which Green has not challenged. The reports indicate that each service treatment took between two to three hours, and that the facility was treated for spiders in October and November 2019. [Dkt. No. 19-27 at 3, 5]. Glue traps were checked on February 11, 2020,

HCRJ East has a program for controlling mold that requires inmates to clean their showers after every use [Dkt. Nos. 19-1 and 19-28, excerpt from Inmate Handbook], and for using trustees to clean the showers daily. Showers are treated for mold every 18 months and no less than every two to three years. If mold is found in the interim, it would be treated. [Id.].

HCRJ requires the trustees who serve food to wear clean uniforms, new gloves, beard guards, and head covers each time food is served. [Dkt. Nos. 19-29-2; 25-1 at 6].

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate, i.e., that no genuine issues of material fact are present for resolution. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The facts which a moving party bears the burden of proving are those which are material: materiality is dictated by "the substantive law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once a moving party has met its burden of proof, the non-moving party must produce specific facts to generate a disputed issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court will view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997). Nevertheless, "[o]nly disputes over facts which might affect

---

March 11, 2020, April 14, 2020, and May 12, 2020. Under "activity," the reports for the traps indicate either "none" or "without activity." [Dkt. No. 19-27 at 11-18].

the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

The non-moving party may not defeat a properly supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). This applies even where the non-moving party is a pro se prisoner. Campbell-El v. Dist. of Columbia, 874 F. Supp. 403, 406-07 (D.C. 1994); see also Local Civil Rule 7(K)(3) (to defeat a dispositive motion, a pro se party "must identify all facts stated by the moving party with which the pro se party disagrees and must set forth the pro se party's version of the facts by offering affidavits ... or by filing sworn statements....").[7]  Unsupported speculation is not enough to withstand a motion for summary judgment. See Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411-12 (4th Cir. 1986). Similarly, "[t]he mere existence of some alleged factual dispute" cannot defeat a motion for summary judgment; the dispute must be both "material" and "genuine," meaning that it "might affect the outcome of the suit under the governing law." Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001) (emphasis omitted).

### III.  Due Process Claim

Greene alleges he was denied due process with regard to the transfers on September 24, 2019, November 22, 2019, and January 13, 2020.  The defendants deny his allegations and

---

[7] "Generally, an affidavit filed in opposition to a motion for summary judgment must present evidence in substantially the same form as if the affiant were testifying in court." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (citing Fed. R. Civ. P. 56(e)).  Affidavits must "be made on personal knowledge, set out facts admissible in evidence, and show that the affiant is competent to testify on the matters stated." Harris v. Mayor & City Council of Baltimore, 429 F. App'x 195, 198 n.5 (4th Cir. 2011).  Additionally, "summary judgment affidavits cannot be conclusory ... or based upon hearsay." Evans, 80 F.3d at 962.

Greene's responses admit or fail to contest the relevant and material facts the defendants put forward in their motion for summary judgment.[8]

### A. Denial of Due Process: September 24, 2019

Greene was a pretrial detainee on September 24, 2019 and alleges the defendants transferred him to the RHU as punishment, which subjected him to unconstitutional conditions of confinement. [Dkt. No. 5 at 5]. He further alleges that he had not violated any rule or policy to justify his transfer and that he was afforded no notice, hearing, justification, opportunity to appear and be heard, or reason. [Id.].

The record establishes that Greene was transferred on September 24, 2019, to HCRJ East for administrative reasons based upon his disciplinary record. Greene filed a grievance and was informed that he had been transferred for administrative reasons. Greene did not appeal the response. Before his transfer on September 24, 2019, Greene was convicted of four institutional charges and a PREA complaint. See, supra at 5-6. In addition, on September 12, 2019, the PREA complaintant informed HCRJ that she did not feel comfortable with Green in HCRJ West because of her encounter with him in the medical unit. [Dkt. No. 19-34].

Defendants assert that Greene failed to exhaust his administrative remedies with regard to this alleged constitutional violation. The Prison Litigation Reform Act ("PLRA") requires an inmate "to exhaust any "available" administrative remedies *before* pursuing a § 1983 action in federal court." Graham v. Gentry, 413 F. App'x. 660, 662-663 (4th Cir. 2011) (emphasis added). The exhaustion requirement "allow[s] a prison to address complaints about the program it

---

[8] Because Greene failed to respond to Montague's denial of any involvement in any transfer decision or in the ICC hearings [Dkt. No. 19-40], Montague's motion for summary judgment on Greene's due process claim will be granted. See West v. Atkins, 487 US. 42, 48 (1988); see, e.g., Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (affirming summary judgment where plaintiff failed to establish the defendant "acted personally in the deprivation of [his] rights.").

administers before being subjected to suit, reduc[es] litigation to the extent complaints are

satisfactorily resolved, and improv[es] litigation that does occur by leading to the preparation of

a useful record." Porter v. Nussle, 534 U.S. 516, 519 (2002). "[T]he PLRA's exhaustion

requirement is mandatory," Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 677 (4th

Cir. 2005) and an "untimely or otherwise procedurally defective administrative grievance" does

not satisfy the PLRA's exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 83-84 (2006).

Defendants acknowledge that Greene filed a grievance but aver that he did not appeal the

response. [Dkt. No. 19-30 at 2]. Adams v. Sw. Va. Reg'l Jail, C.A. No. 7:12cv00462, 2014

U.S. Dist. LEXIS 106195, *10 (W.D. Va. Aug. 4, 2014) (an inmate does not exhaust the

grievance process if he fails to file an appeal in accordance with jail policy and procedure), aff'd

sub nom. Adams v. Ofought, 592 F. App'x 225 (4th Cir. 2015). Greene has not disputed this fact

and instead tries to justify his failure to appeal on what he characterizes as deception because the

response to his grievance directed him to refer any questions to Chief Felton. [Dkt. No. 19-25 at

2]. Greene was given a copy of the grievance procedures in June 2019 and his own response

admits he knew he was supposed to file an appeal within two days. [Dkt. No. 25 at 2].

"Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's

exhaustion requirement. The only limit to §1997e(a)'s mandate is the one baked into its text: An

inmate need exhaust only such administrative remedies as are 'available.'" Ross v. Blake, 136 S.

Ct. 1850, 1862 (2016). A court may "not read futility or other exceptions into statutory

exhaustion requirements where Congress has provided otherwise." Booth v. Churner, 532 U.S.

731, 741 n.6 (2001). Greene presents no evidence that an appeal was unavailable to him.[9]

---

[9]  Although Greene does not rely on the exceptions in Ross, the Court finds that the three
exceptions in Ross do not apply. 136 S. Ct. at 1859-60. First, the grievance process was
available to Greene. Second, the grievance procedure is straightforward, and Greene has used it
in several instances. Lastly, there is no evidence that the jail personnel prevented Greene from

Accordingly, the defendants' motion for summary judgment on Greene's assertion he was denied due process with respect to the September 24, 2019 transfer will be granted because he failed to exhaust his administrative remedies.

Even if this claim were exhausted, summary judgment would be granted to the defendants because the record shows that Greene was not denied due process. In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court held that "due process require[s] written notice to the inmate of the charges, an opportunity for the inmate to call witnesses and present documentary evidence in his defense, and a written statement by the fact finders of the evidence relied upon and the reasons for the disciplinary action." Baker v. Lyles, 904 F.2d 925, 929 (4th Cir. 1990).[10] A jail, however, may take "immediate preventative action" for security reasons and due process can be provided after the restriction has been imposed. Dilworth, 841 F.3d at 255. "Due process for administrative purposes can include 'informal, nonadversary review of the information' supporting segregation, including submissions from the detainee, 'within a reasonable time after confining him to administrative segregation.'" Williamson, 912 F.3d 154, 184. The record establishes that Greene was given notice, an opportunity to be heard and to be present at a hearing, and the reason for his transfer.[11]

---

using the grievance procedure or from filing an appeal. See Gibson v. Weber, 431 F.3d 339, 341 (8th Cir. 2005) ("Appellants have presented no evidence that any prison official thwarted an attempt to initiate the procedures or that any official made it impossible for them to file grievances.").

[10] Greene does not raise a substantive due process claim challenging "the general conditions of confinement or the treatment of all detainees in a specific facility." Williamson v. Stirling, 912 F.3d 154, 174 (4th Cir. 2018). Here, Greene has raised a procedural due process claim because his claim is premised upon "individually-imposed restrictions — as opposed to shared conditions of confinement." Id. (citing Dilworth v. Adams, 841 F.3d 246, 250-52 (4th Cir. 2016)).

[11] Even if this claim were construed as a substantive due process claim, there was no constitutional violation. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he

Further, HCRJ's actions were consistent with the regulations covering PREA compliance because they acted as immediately as possible to remove him from HCRJ West and away from the victim of his May 16, 2019 assault.  See, supra at note 4.

*B. Denial of Due Process: November 22, 2019*

At his ICC review on November 22, 2019, Greene was informed he had the right to be present; participate in the review; have a staff member or inmate advisor assist him; receive a copy of the written findings, reasons, and recommendations of the ICC review; and appeal the disposition of the ICC review.  The record of the proceedings establishes that Greene was present at the custody review and advised that the purpose of the hearing was to review the September 24, 2019 transfer.  The ICC also told Greene that he had been found not to be a security threat and that he would be returned to the RISE program in HCRJ East.  [Dkt. No. 19-19].

Greene did not file a grievance after the ICC's November 22, 2019 decision to transfer him to HCRJ East, where he was housed in an open pod, Pod 64A, and not placed in segregation. Greene remained in Pod 64A until December 7, 2019 when he was charged with disobeying an order (aggressive behavior) and transferred to Pod 63D.  [Dkt. No. 19-5].  Greene neither appealed the adjudication nor did he challenge the conduct of the December 12, 2019 hearing, which resulted in his transfer back to HCRJ West after five days in segregation for the disciplinary conviction.  He remained there until January 13, 2020.

---

been released while awaiting trial." Bell v. Wolfish, 441 U.S. 520, 540 (1979).  Within three months, Greene had been found guilty of four institutional violations — including one that implicated the PREA which required HCRJ to keep Greene separate from his victim.  Indeed, HCRJ made repeated attempts to place Greene in less restrictive pods but he continued to violate institutional rules and posed a danger to himself and others, which "dispel[s] any inference that such restrictions [were] intended as punishment." Id.

Greene does not dispute that he did not file a grievance after the November 22, 2019 hearing, and he has not provided a valid basis for excusing his failure to exhaust his claims related to the November 22, 2019 transfer. Instead, he simply ignores the PLRA's plain language that he must exhaust his administrative remedies *before* filing in federal court. The defendants' motion for summary judgment with respect to the November 22, 2019 ICC transfer hearing will therefore be granted.

C. *Denial of Due Process: January 13, 2020*

On January 13, 2020, Greene was transferred from HCRJ West to Pod 63F in HCRJ East because the PREA complainant was housed at HCRJ West. [Dkt. No. 19-1]. Greene filed grievances on January 13, 2020 and January 14, 2020 alleging that he was being transferred as punishment because there was no reason for this transfer. [Dkt. Nos. 19-22 and -23].

A pretrial detainee has a constitutional right "to be free from punishment." Bell, 441 U.S. at 535. To prevail, a plaintiff must show that a restriction was either: "(1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." Slade v. Hampton Roads Reg'l Jail, 407 F.3d 243, 251 (4th Cir. 2005) (citation omitted). Bell recognizes that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." 441 U.S. at 546. If "a restriction imposed by the jail officials is for administrative purposes — which include managerial and security needs — the level of process to which the pretrial detainee is entitled is diminished." Williamson, 912 F.3d at 175.

Jails have legitimate interests in maintaining security and ensuring inmate safety, including segregating inmates from other inmates for safety reasons and "operating the

16

[detention facility] in a manageable fashion.'" Bell, 441 U.S. at 539-40, 540 n.23, 546-47, 548 n.29. Jail policies reasonably related to the legitimate institutional interests they are intended to advance do not, "without more, amount to 'punishment.'" Id. at 539. Given the need to ensure the safety of the PREA complainant, HCRJ did not act with the intent to punish Greene, but to ensure compliance with the PREA and protect the victim because the security and safety of a PREA victim is a legitimate governmental interest. Moreover, Greene's numerous adjudications for inappropriate conduct and assaults were also legitimate reasons for his placement in segregation.

Greene argues that HCRJ could have adopted other measures to keep him apart from the PREA complainant[12] and that he should not have been placed in segregation because he was not convicted of the sexual battery and therefore there was no basis to separate him from the victim. [Dkt. No. 25 at 5- 6]. Greene's arguments have no merit. The PREA compliance regulations do not require a conviction, HCRJ officials do not have to pick between alternatives to keeping the victim safe, and HCRJ officials have the discretion to act in a reasonable manner.

Greene's argument that there were other means of keeping him and the victim apart ignores the deference afforded to correction officials concerning safety and security matters. Judgments regarding security "are peculiarly within the province and professional expertise of corrections officials, and in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." Pell v. Procunier, 417 U.S. 817, 827 (1974); accord Rhodes v. Chapman, 452 U.S. 337, 349 (1981) ("a prison's internal security is peculiarly a

---

[12] Greene asserts that he was placed in segregation because the PREA victim was Captain Dismuke's cousin. This assertion has no reliability as it is based upon hearsay, [Dkt. No. 25 at 6] and is unsworn. See, supra at note 2; see also [Dkt. No. 27-1 at 2].

matter normally left to the discretion of prison administrators"); see also Whitley v. Albers, 475 U.S. 312, 321-322 (1986) (deference to prison administrators "extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline"). Greene's transfer to HCRJ East when a cell became available was a decision that furthered a legitimate governmental objective (protecting the PREA victim). In short, there is no credible evidence in this record of any intent to punish. On this record, the defendants' motion for summary judgment will be granted as to plaintiff's due process claims.

## IV. Conditions of Confinement Claim

Greene's claim has two parts. The first part concerns the delivery of the food trays, which Greene alleges are unsanitary because the workers allegedly do not wear clean or fresh gloves and instead use "the same gloves used to empty trash, mop, sweep, and clean toilets." [Dkt. No. 5 at 7]. The second part alleges that his cell block is infested with mice, spiders, other insects, and the showers have mold, his cell is poorly lighted; and he is only allowed out of his cell for ninety minutes each day. [Dkt. No. 5 at 6]. The defendants admit that Greene submitted a grievance on May 3, 2020 regarding the unsanitary gloves [Dkt. No. 19 at 14; 19-29], but that the remaining matters were not grieved before Greene filed his complaint and the amended complaint.

### A. Unsanitary Gloves

The May 3, 2020, grievance alleged that for several days, Greene

received breakfast trays in which [his] food (bread) or (biscuit) had been physically touched and moved around on [his] tray by trustees at the behest of staff. Before the service of the trays, the trustees routinely dump trash, sweep, mop floors, clean ... showers, etc. without changing gloves. Also, they touch food carts, crates, door handles, etc. and then they touch [Greene's] food.

18

[Dkt. No. 19-29 at 1]. Greene also alleged that the milk was not cold and that his food was not hot. [Id.]. The response stated that the trustees put on clean uniforms, gloves, beard guards, and head covers each time before the food court is opened and that the trustees are supervised by a deputy. [Id. at 2]. Greene appealed stating the facts in the response were wrong and that the response had not addressed his complaint that someone had tampered with his food. The appeal was denied noting trustees always wear gloves when serving food. [Id.].

To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove the following elements: (1) the deprivation of a basic human need was objectively "sufficiently serious" and (2) the prison official subjectively acted with deliberate indifference. Wilson v. Seiter, 501 U.S. 294, 298, 303 (1991). "Allegations of unsanitary food service facilities are sufficient to state a cognizable constitutional claim, see Bolding v. Holshouser, 575 F.2d 461, 465 (4th Cir. 1978), [as] long as the deprivation is serious, and the defendant is deliberately indifferent to the need. Wilson v. Seiter, 501 U.S. 294, 297-302 (1991)." Brown v. Brock, 632 F. App'x. 744, 747 (4th Cir. 2015). Plaintiff's allegations, however, are not serious enough to constitute a violation of constitutional magnitude.

To satisfy the objective component, Greene must establish that the challenged condition caused or constituted an extreme deprivation. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). To demonstrate "an extreme deprivation, [Greene] must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions." Id.

To fulfill the subjective component, Greene must demonstrate a "deliberate indifference" to his health or safety by the defendants. Farmer, 511 U.S. at 834 (citation omitted).

19

> [A] prison official cannot be found liable under the Eighth Amendment for
> denying an inmate humane conditions of confinement unless the official knows of
> and disregards an excessive risk to inmate health or safety; the official must both
> be aware of facts from which the inference could be drawn that a substantial risk
> of serious harm exists, and he must also draw the inference.

Id. at 837.  Deliberate indifference is more than mere negligence but less than malice.  Estelle v.

Gamble, 429 U.S. 97, 105-06 (1976).  Put simply, if defendants were aware of an excessive risk

of harm to Greene's health or safety and disregarded it, defendants had a sufficiently culpable

state of mind.  See Wilson, 501 U.S. at 303; Brown v. North Carolina Dept. of Corrections, 612

F.3d 720, 723 (4th Cir. 2010).  Greene has not established either that he suffered an extreme

deprivation or that he has been injured by the alleged unsanitary handling of his food as alleged

in his amended complaint.

Further, Greene does not claim that the diet provided by HCRJ was inadequate.  See

Jones v. Diamond, 636 F.2d 1364, 1378 (5th Cir. 1981) ("Constitution requires that prisoners be

furnished reasonably adequate food"); Williams v. Berge, 102 F. App'x. 506, 507 (7th Cir.2004)

("Prisoners have a right to adequate food, but not to food that is tasty or even appetizing")

(internal citations omitted).  He has alleged only that the food was not served hot.  See Hamm v.

DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) ("The fact that the food occasionally

contains foreign objects or sometimes is served cold, while unpleasant does not amount to a

constitutional deprivation); Prophete v. Gilless, 869 F. Supp. 537, 538 (W.D. Tenn. 1994) (food

that was cold by the time it was served did not constitute cruel and unusual punishment).

The Eighth Amendment requires prisons to provide food that is not "an immediate danger

to the health and wellbeing of the inmates who consume it."  Robles v. Coughlin, 725 F.2d 12,

15 (2nd Cir. 1983).  Absent injury, contamination of a food tray is insufficient to sustain an

Eighth Amendment claim.  See, e.g., Phillips v. LaValley, No. 12cv609, 2013 U.S. Dist. LEXIS

186318 *31-32 (N.D. N.Y. Mar. 24, 2014) (food tray "contaminated" with a cockroach poses a

condition "insufficiently serious to sustain an Eighth Amendment conditions of confinement claim"); Reed v. Olson, No. 4:09cv3126, 2011 U.S. Dist. LEXIS 18289 *7-9 (D.S.C. Jan. 19, 2011) (no Eighth Amendment violation where inmate alleged "food is often contaminated with hair, rocks, various pieces of steal [sic] particles, and bugs, both alive and dead"). For these reasons, the defendants' motion for summary judgment will be granted as to this issue.

   B. *Unexhausted Conditions*

   Greene alleges that his cell block is infested with mice, spiders, other insects and is poorly lighted; that the showers have mold; and that he is only allowed out of his cell for ninety minutes each day. [Dkt. No. 5 at 6-7]. Defendants assert Greene failed to grieve these conditions before filing his complaint or the amended complaint and have moved for summary judgment because Greene did not exhaust these claims. Greene filed a grievance related to these allegations on October 5, 2020, after he filed this civil action. [Dkt. No.19-30 at 2]. He also claims he filed a grievance on November 15, 2020, about five months after the amended complaint was filed, which he asserts satisfies the exhaustion requirement. [Dkt. No. 25-1 at 3].[13]  Greene is incorrect.

   Greene's argument ignores that the PLRA requires he must exhaust his grievances *before* filing a civil complaint or seeking to amend it. See, supra at 12-13. Greene's reply in opposition establishes he failed to satisfy the PLRA exhaustion requirement. Because Greene has not properly exhausted any claim besides the unsanitary service of his food, the defendants' motion

---

[13]  Greene also challenges the size of his cell at HCRJ East but does not explain how the size differences between a cell in HCRJ West (6 x 11) is less onerous than a cell size in HCRJ East, which he alleges is larger (8 x 10). Using Greene's factual allegations, the cells in HCRJ East are 80 square feet with a single bunk and those in HCRJ West are 66 square feet with a bunk bed and a cot. Greene also never explains why he characterizes the larger cell in HCRJ as a "dog cage." [Dkt. No. 5 at 5, 6]. In any event, the cell size was not an issue or mentioned in his grievance and therefore is not exhausted.

for summary judgment regarding the unexhausted conditions in his claim will be granted.

Further, even if Greene had properly grieved the other conditions before he filed the amended

complaint, summary judgment would still be granted to defendants because these claims have no

merit.

Greene has not disputed that HCRJ has a pest control program.  See supra at note 6

Under such circumstances, at best, Greene has alleged negligence.  See Sain v. Wood, 512 F.3d

886, 895 (7th Cir. 2008) (finding plaintiff could not prevail on deliberate indifference claim

because defendant had a monthly extermination program and had responded to plaintiff's reports

of cockroaches in his cell); Harris v. Ostrout, 65 F.3d 912, 918 (11th Cir. 1995) (affirming

summary judgment to prison official on claim that the inmate was subjected to an insect-infested

cell where regular insect control program was unchallenged); Middlebrook v. Tenn. Dept of

Corr., No. 07-2373-STA, 2010 U.S. Dist. LEXIS 90709, *34 (W.D. Tenn. 2010) (due to

defendants' continuous "efforts to deal with the pest problem" at the facility, plaintiff cannot

show deliberate indifference to inmate health and safety and any failure to eliminate the pest

problem establishes "at most" negligence).

The mere presence of mold in the jail's showers also does not establish the type of severe

deprivation needed to establish a constitutional violation.  See Carroll v. DeTella, 255 F.3d 470,

473 (7th Cir. 2001) ("[F]ailing to provide a maximally safe environment, one completely free

from pollution or safety hazards, is not [cruel and unusual punishment].").  Greene does not

dispute the defendants' evidence that HCRJ has a program for daily cleaning of the showers by

trustees and mold treatments every 18-24 months or as needed, or that he is supposed to clean the

shower area after he is finished.  See Shrader v. White, 791 F.2d 975, 984 (4th Cir. 1985) (no

constitutional violation "[i]n light of the evidence of daily attempts to clean the showers and no evidence of disease resulting from mold in the showers").

Greene's claim that his cell is poorly lighted is, at best, conclusory. The amended complaint admits there are two florescent lights in the cell and that the window, although opaque, does allow sunlight as well. [Dkt. No. 5 at 6]. On this record, Greene has not established that the illumination at HCRJ East rises to a level that violates the Constitution. See Shrader, 761 F.2d at 984.

Finally, his claim about inadequate recreation time is misleadingly pleaded because he has not been in continuous segregation. From May 9, 2019 through the filing of the amended complaint on June 20, 2020, the times when Greene was in segregation were due to the need to keep him apart from the PREA complainant; as a result of his own inappropriate behavior; assaults of or on other inmates; and during periods of ICC review. See Johnson v. Williams, 768 F. Supp. 1161 (E.D. Va. 1991) (holding that restrictions on an inmate's outdoor recreation during a nine to ten week prison lockdown did not violate his rights where prison officials had legitimate penological interest in keeping inmates in cells). Further, plaintiff has not shown the requisite harm "or a grave risk of such harm," resulting from the challenged condition. Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995).

## V. Conclusion

For the reasons discussed above, defendants' motion for summary judgment [Dkt. No. 18] will be granted and plaintiff's motion to dismiss [Dkt. No. 24] will be denied by an Order to be issued with this Memorandum Opinion.

Entered this ___18___ day of October 2022.

Alexandria, Virginia

_____ /s/ _____
Leonie M. Brinkema
United States District Judge

23